# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JOWANNA ETHERIDGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:21-cv-00413-NAD |
| | ) |
| BELK, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART AND DENYING IN PART
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

For the reasons stated below and on the record in the December 20, 2022 motion hearing, the court **GRANTS IN PART** and **DENIES IN PART** Defendant Belk, Inc.'s summary judgment motion.

## INTRODUCTION

Plaintiff JoWanna Etheridge filed a complaint alleging that she was injured when she hit her hand on a bar that protruded from a clothing rack while visiting a store owned and operated by Defendant Belk. Plaintiff Etheridge alleges claims against Belk for negligence and wantonness.

On this summary judgment motion (Doc. 21), Belk argues that the placement of the clothing rack did not create an unreasonably dangerous condition, that any danger was open and obvious, and that the evidence is insufficient to support a

1

wantonness claim. Based on the record evidence and controlling law, the court concludes that there are triable fact issues for a jury on Etheridge's negligence claim, but that there is no genuine issue of material fact on her wantonness claim.

## BACKGROUND

### A.   Factual background

On September 5, 2019, Plaintiff Etheridge was shopping at a Belk store in Birmingham, Alabama. Doc. 25 at 3; Doc. 27 at 1. For purposes of this summary judgment motion, Belk does not dispute that Etheridge "was a business invitee when she fell." Doc. 22 at 10; *see* Doc. 25 at 7.

While shopping at the Belk store, Etheridge asked a sales associate for directions to the restroom, and then walked toward the restroom. Doc. 25 at 3; Doc. 27 at 2. Etheridge was walking on the tiled walkway through the children's clothing department, toward the restroom, when she hit her hand against a bar that protruded from a clothing rack. Doc. 25 at 3; Doc. 27 at 2. Etheridge testified that she did not see the protruding bar before her hand hit it, and that the bar was positioned at the height that "your arm would naturally hang when walking." Doc. 25 at 3; Doc. 27 at 2. According to Etheridge, she fell and sustained physical injuries, including injuries "to her right hand, right shoulder, neck, and knees," as well as "right rotator cuff surgery." Doc. 22 at 3; *see* Doc. 26-1 at 25–26.

### B.  Procedural background

On December 21, 2020, Etheridge filed her complaint in Alabama state court. Doc. 1-1.  On March 19, 2021, Belk removed this action pursuant to 28 U.S.C. § 1332 based on diversity jurisdiction.  Doc. 1.  The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Doc. 7.

On September 23, 2022, after the close of discovery, Belk filed this summary judgment motion.  Doc. 21.  The motion has been fully briefed.  *See* Docs. 22, 23, 24, 25, 26, 27.  On December 20, 2022, the court held a motion hearing.  *See* Doc. 28; Minute Entry (Entered: 12/20/2022).

### C.  Legal background

Under Alabama law, a plaintiff who asserts a negligence claim related to premises liability must establish the following elements:  "duty, breach of duty, cause in fact, proximate or legal cause, and damages."  *Ex parte Harold L. Martin Distrib. Co.*, 769 So. 2d 313, 314 (Ala. 2000) (quotation marks omitted).[1]  "[T]he duty owed an injured person in a premises-liability case depends on the legal status of the person when the injury occurred, i.e., whether the person injured was a trespasser, a licensee, or an invitee."  *Unger v. Wal-Mart Stores, East L.P.*, 279 So.

---

[1] *See, e.g.*, *Lilya v. Greater Gulf State Fair, Inc.*, 855 So. 2d 1049, 1054 (Ala. 2003) (applying premises liability principles to the duty element of the plaintiff's negligence claim).

3d 546 (Ala. 2018) (citation omitted).

As noted above, it is undisputed that Etheridge was an invitee at the Belk store.  A property owner "owes an invitee the duty to keep the premises in a reasonably safe condition and, if the premises are unsafe, to warn of hidden defects and dangers that are known to the landowner but that are hidden or unknown to the invitee." *Galaxy Cable, Inc. v. Davis*, 58 So. 3d 93, 98 (Ala. 2010); *see also Jones Food Co. v. Shipman*, 981 So. 2d 355, 361 (Ala. 2006) ("The duty owed by the invitor to an invitee is to exercise ordinary and reasonable care to keep the premises in a reasonably safe condition." (citing *Winn-Dixie v. Godwin*, 349 So. 2d 37 (Ala. 1977))).

Generally speaking, if the defendant owed the plaintiff a duty, "then the questions of breach of that duty, proximate causation, and damages are normally resolved by the jury." *Jones Food*, 981 So. 2d at 361.

However, "[t]he owner of a premises has no duty to warn an invitee of open and obvious [dangers] which the invitee is aware of, or should be aware of, in the exercise of reasonable care on the invitee's part." *Dolgencorp, Inc. v. Taylor*, 28 So. 3d 737, 742 (Ala. 2009) (quotation marks omitted). "'A condition is "open and obvious" when it is known to the [plaintiff] or should have been observed by the plaintiff in the exercise of reasonable care.'" *Daniels v. Wiley*, 314 So. 3d 1213, 1225 (Ala. 2020) (quoting *Denmark v. Mercantile Stores Co.*, 844 So. 2d 1189, 1194

4

(Ala. 2002)).

Whether an alleged dangerous condition was open and obvious also is normally a question for the jury. *See, e.g.*, *Cuevas v. W.E. Walker, Inc.*, 565 So. 2d 176, 178 (Ala. 1990) (stating that "questions of . . . whether the plaintiff should have been aware of the defect[] are normally questions for the jury" (quoting *Bogue v. R. & M. Grocery*, 553 So. 2d 545 (Ala. 1989))); *Marquis v. Marquis*, 480 So. 2d 1213, 1215–16 (Ala. 1985) (reasoning that the Alabama Supreme Court has "long been committed to the proposition that the plaintiff's appreciation of the danger is, almost always, a question of fact for the determination of the jury" (quoting *Kingsberry Homes Corp. v. Ralston*, 285 Ala. 600, 607 (1970))).

Separately, to prove wantonness, a plaintiff must show both the defendant's "conscious doing of some act or the omission of some duty while knowing of the existing conditions," and that the defendant was "conscious that, from doing or omitting to do an act, *injury will likely or probably result*." *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (emphasis added); *see Bozeman v. Central Bank of the South*, 646 So. 2d 601, 603 (Ala. 1994); *see also* Ala. Code § 6-11-20(b)(3) (defining wantonness as "[c]onduct which is carried on with a reckless and conscious disregard of the rights or safety of others").

## LEGAL STANDARD

Summary judgment is appropriate when the movant establishes that "there is

no genuine dispute as to any material fact," and that the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute about a material fact is "genuine," if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

To avoid summary judgment, the nonmovant must go beyond the allegations to offer specific facts creating a genuine dispute for trial. *Celotex*, 477 U.S. at 324–25. The court's responsibility is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The court must construe all evidence and draw all reasonable inferences in favor of the nonmovant. *Centurion Air Cargo, Inc. v. UPS Co.*, 420 F.3d 1146, 1149 (11th Cir. 2005).

Where there is no genuine dispute of material fact for trial, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c).

Finally, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "In such a situation, there can be 'no genuine issue as to

any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23; *accord, e.g.*, *Edwards v. National Vision, Inc.*, 568 F. App'x 854, 859 (11th Cir. 2014); *Brown v. Alabama DOT*, 597 F.3d 1160, 1179 (11th Cir. 2010).

## DISCUSSION

There are triable issues of fact for a jury on Plaintiff Etheridge's negligence claim, but there is no genuine issue of material fact on her wantonness claim.

**I.     On Etheridge's negligence claim, there are triable issues of fact for a jury.**

Belk's summary judgment motion is denied on Etheridge's negligence claim because there are triable issues of fact for a jury.  As explained above, there are four elements to Etheridge's Alabama law negligence claim:  duty, breach, causation, and damages.  *See Ex parte Harold L. Martin Distrib. Co.*, 769 So. 2d at 314.

For purposes of this summary judgment motion only, there is no issue regarding the duty, causation, or damages elements of Etheridge's negligence claim. *See, e.g.*, Doc. 22 at 2 n.1, 8.

In addition, Belk acknowledges that under Alabama law "a premises owner has constructive notice of 'defects' that are part of the premises, such as display racks."  Doc. 27 at 11 n.1 (citing *Winn-Dixie Montgomery, Inc. v. Weeks*, 504 So. 2d 1210 (Ala. 1987)).

Consequently, the questions on this motion are (1) whether the placement of

the clothing rack created an unreasonably dangerous condition, and (2) if so, whether that alleged dangerous condition was open and obvious. Based on the record facts and applicable law, those questions will be for a jury.

> **A.  A reasonable jury could find that the placement of the clothing rack created an unreasonably dangerous condition.**

A reasonable jury could find that the placement of the clothing rack—and the protruding bar—created an unreasonably dangerous condition in the Belk store. As explained above, because it is undisputed that Etheridge was an invitee when she visited the store, Belk had the duty "to exercise ordinary and reasonable care to keep the premises in a reasonably safe condition." *Jones Food*, 981 So. 2d at 361. And, the question whether a property owner maintained its premises in a reasonably safe condition is normally a question for a jury. *See id.*; *Galaxy Cable*, 58 So. 3d at 98.

Construing the evidence and all reasonable inferences in Etheridge's favor (*see Centurion Air Cargo*, 420 F.3d at 1149), there is a triable issue about whether the placement of the clothing rack and the protruding bar created an unreasonably dangerous condition.

As noted above, Etheridge was at the Belk store, walking on the tiled walkway through the children's clothing department toward the restroom, when she hit her hand against a bar that protruded from a clothing rack into the tiled walkway. Doc. 25 at 3; Doc. 27 at 2. Belk's corporate representative explained at his deposition that some Belk stores have a "general layout" of "ceramic tile walkways and

8

carpeted areas to display clothing." Doc. 26-3 at 8. The corporate representative also acknowledged that customers typically walk on these tiled walkways (or aisles), and described them as the "major highway going around the store." Doc. 26-3 at 9.

It is undisputed on this motion that the relevant clothing rack had a bar that was protruding into the tiled walkway, and other bars that were not protruding into the walkway. Doc. 25 at 4; Doc. 27 at 4–5. Etheridge testified that, while the relevant bar did not protrude one foot into the walkway, it was protruding about three inches further than the other (non-protruding) bars. Doc. 26-1 at 14; *see also* Doc. 26-1 at 13 ("The top arm and the other bars were even with the carpet. That one in particular sat out in the aisle."). She also testified that the bar "looked like someone may have put the wrong piece on the rack." Doc. 26-1 at 14. Etheridge testified that the feet of the relevant clothing rack were "pulled to the edge" of the walkway, "where the carpet meets the tile," while "the other [clothing racks] were pulled back." Doc. 26-1 at 15. Etheridge testified that she hit her hand on the clothing rack because it was protruding too far, and "it wasn't in the right place." Doc. 26-1 at 15.

It also is undisputed that the surrounding area was "crowded," and that Etheridge had to maneuver around a clothing rack placed in the middle of the tiled walkway (a "Z-rack") while walking toward the restroom. Doc. 25 at 4–5; Doc. 27 at 4. Etheridge testified that she had to pass to the right of the Z-rack in the middle

9

of the walkway, and had just maneuvered around that Z-rack when she hit her hand. Doc. 26-1 at 11.

On the date of the relevant incident, Carol Proctor was working at the Belk store as a sales manager in the cosmetics and fragrance department. Doc. 26-2 at 5. Proctor testified that temporary clothing racks in the middle of the tiled walkways (Z-racks), like the one around which Etheridge had to maneuver, decrease the amount of available space for a customer to use when walking on the tiled walkway. Doc. 26-2 at 12, 18–19; *see* Doc. 25 at 5. Belk's corporate representative agreed that a Z-rack in the middle of a tiled walkway "could take a six-foot wide aisle and take away like two feet." Doc. 26-3 at 12.

Furthermore, when asked whether a bar "sticking out into the aisle" would be a "problem," Proctor testified that "it would depend on the amount of space." Doc. 26-2 at 19. She testified that, "[i]f it stuck out two feet, it would be too far." Doc. 26-2 at 19. When asked whether it would be "too far" if the bar "stuck out one foot," Proctor testified that "[i]t depends on the aisle." Doc. 26-2 at 19. And, when asked "if there's a clothing rack in the middle and a bar sticking out six inches or so, is that enough space for a customer to comfortably walk in the aisle," Proctor answered, "It would depend on the size of the rack that's in the middle of the aisle . . . ." Doc. 26-2 at 19.

All of this evidence is consistent with the Alabama Supreme Court's

instruction that questions of breach are usually for a jury. *See, e.g.*, *Jones Food*, 981 So. 2d at 361.

Certainly, it does not appear that the evidence would support a jury finding that *any* placement of the relevant clothing rack necessarily would have been negligent (i.e., without more). But the court must construe the evidence and reasonable inferences in Etheridge's favor. And the record evidence is sufficient for a reasonable jury to find an unreasonably dangerous condition based on Belk's placement of the clothing rack, in conjunction with the bar protruding into the tiled walkway, and the nearby placement of the Z-rack in the middle of the walkway, among other things. *See, e.g.*, *Wal-Mart Stores v. McClinton*, 631 So. 2d 232, 234 (Ala. 1993) (holding that the evidence was sufficient to support the finding on the plaintiff's negligence claim that the property owner "created a hazardous condition that caused the plaintiff's fall" by "displaying the protruding gun cabinet with its easily detached molding"); *Mims v. Jack's Rest.*, 565 So. 2d 609, 611 (Ala. 1990) (reversing trial court order granting summary judgment in favor of the defendant because "a defective threshold or a cart or a display rack is a fixture that requires ordinary and reasonable maintenance in order to provide safe premises for the store's customers," and because the question whether the fixture created an unreasonably dangerous condition was for the jury); *Winn-Dixie Montgomery*, 504 So. 2d at 1211 (similar) ("The evidence in this case was susceptible of several inferences.");

*Schrule v. American Multi-Cinema, Inc.*, 2020 U.S. Dist. LEXIS 256714, at *8 (N.D. Ala. Sept. 14, 2020) (denying the defendant's summary judgment motion where the plaintiff's deposition testimony about an alleged dangerous condition "would allow a reasonable juror to go either way"); *Blankenship v. Baker Foods, Inc.*, 2018 U.S. Dist. LEXIS 215405, at *7 (N.D. Ala. Dec. 21, 2018) (denying the defendant's summary judgment motion in part because the plaintiff "provides *some* evidence from which a jury could conclude that the [alleged hazard] created a dangerous condition" (emphasis in original)).

On the other hand, a jury reasonably could find that the placement of the clothing rack and the protruding bar did *not* create an unreasonably dangerous condition. But this is not a case where Etheridge has identified no evidence at all based on which a jury reasonably could find breach, or where Etheridge has done nothing more than speculate about the cause of her injuries. *See, e.g.*, *Edwards v. Hammond*, 510 So. 2d 234, 236 (Ala. 1987) ("Because there is a complete absence of evidence tending to establish a breach of any duty owed the plaintiff by the defendant, the directed verdict was proper."); *Manning v. Tractor Supply Co.*, 2015 U.S. Dist. LEXIS 46370, at *1 (S.D. Ala. April 9, 2015) ("A plaintiff's speculation about the cause of an injury is insufficient to overcome summary judgment.").

### B. A reasonable jury could find that the alleged dangerous condition created by the placement of the clothing rack was not open and obvious.

A reasonable jury could find that the alleged dangerous condition created by the placement of the clothing rack—and the protruding bar—was not open and obvious. As explained above, in determining whether an alleged dangerous condition was open and obvious, the question is whether the alleged hazard was "apparent to, and would be recognized by, a reasonable person." *Hines v. Hardy*, 567 So. 2d 1283, 1284 (Ala. 1990). And (again), that question is normally for a jury. *Cuevas*, 565 So. 2d at 178; *Marquis*, 480 So. 2d at 1215–16.

As explained above, Etheridge was walking on the tiled walkway through the children's clothing department and looking forward toward the restroom, when she hit her hand against the bar protruding from the clothing rack. Doc. 25 at 3; Doc. 27 at 2. Etheridge testified that the feet of the relevant clothing rack were "pulled to the edge" of the walkway, "where the carpet meets the tile," while "the other [clothing racks] were pulled back." Doc. 26-1 at 15.

Etheridge testified that she did not see the protruding bar before her hand hit it, and that the bar was positioned at the height that "your arm would naturally hang when walking." Doc. 25 at 3; Doc. 27 at 2. She also testified that the area was "crowded," and that she had maneuvered around a nearby Z-rack in the middle of the tiled walkway just before her hand hit the protruding bar. Doc. 25 at 4–5; Doc.

13

26-1 at 11.

Again, construing the evidence and all reasonable inferences in Etheridge's favor, there is a triable issue about whether the alleged dangerous condition was open and obvious. *See, e.g.*, *McClinton*, 631 So. 2d at 235 ("While it is evident that [the plaintiff] saw the displayed cabinet, it is not evident that he knew, or should have known, or that he appreciated, the danger caused by the fact that the cabinet and its molding protruded into the aisle. The question whether this danger was open and obvious was properly presented to the jury."); *Dolgencorp*, 28 So. 3d at 748 (Cobb, C.J., dissenting) ("reasonable persons could differ as to whether the boxes were an open and obvious hazard," where the plaintiff was "focused on her shopping and was looking for the fabric softener on the shelf instead of focusing on the floor of the shopping aisle"); *Williams v. Bruno's, Inc.*, 632 So. 2d 19, 22 (Ala. 1993) (reversing trial court order granting summary judgment in favor of the defendant based in part on the plaintiff's testimony that he was focusing his attention elsewhere and did not see the alleged hazard until after he fell).

To be sure, a jury *also* reasonably could find that the alleged dangerous condition posed by the placement of the clothing rack and the protruding bar was visible, in plain view, and open and obvious. But, construed in her favor, the evidence shows that Etheridge was unaware of the alleged hazard. *See* Doc. 26-1 at 13 ("I didn't see it."). The evidence also is sufficient to support a reasonable

14

inference that Etheridge was "exercise[ing] . . . reasonable care" (*Dolgencorp*, 28 So. 3d at 742), and that the hypothetical reasonable person—exercising hypothetical reasonable care—likewise would have been unaware of the alleged hazard. *See, e.g.*, Doc. 26-1 at 13 ("Q. If you had been looking at the rack that you hit, the arm that was sticking out, would you have been able to see it?  A. I doubt it."); *Dolgencorp*, 28 So. 3d at 745 (ruling that the plaintiff's negligence claim failed as a matter of law because the "condition of the premises was open and obvious for all to see," and because it "[wa]s undisputed that [the plaintiff] had noticed and maneuvered around several cases of merchandise in the aisles before her fall"); *Couch v. Von Maur Stores, Inc.*, 2021 U.S. Dist. LEXIS 179846, at *8–9 (N.D. Ala. Sept. 21, 2021) (finding that an alleged dangerous condition was open and obvious in part because the plaintiff "had seen T-Stands before and could tell that they were on wheels," and because the plaintiff had "testified that she could see the wheel that caused her to fall; it was not hidden by garments or anything else").

    Nor is this a case where the plaintiff was familiar with the area and necessarily should have appreciated the alleged dangerous condition.  While Etheridge testified that she previously had visited the Belk store (Doc. 26-1 at 23), she also testified that she had "never seen Belk look like that before, with signs . . . and discounts" (Doc. 26-1 at 23), and that she had to ask for directions to the restroom through the children's clothing department (Doc. 25 at 3; Doc. 26-1 at 9).  *See, e.g.*, *Harding v.*

*Pierce Hardy Real Est.*, 628 So. 2d 461, 463 (Ala. 1993) (summary judgment based on an open and obvious condition is appropriate "when the undisputed evidence shows that the plaintiff was aware of the danger, appreciated the danger, and acted more carefully because of the perceived danger").

## II. On Etheridge's wantonness claim, there is no genuine issue of material fact.

Belk's summary judgment motion is granted on Etheridge's wantonness claim because there is no genuine issue of material fact. On the record evidence, Etheridge cannot create a triable fact issue on the question whether Belk was conscious that injury would likely or probably result from the placement of the clothing rack. *See Celotex*, 477 U.S. at 322–23 (a "failure of proof concerning an essential element of the [plaintiff's] case necessarily renders all other facts immaterial").

As explained above, to prove a wantonness claim under Alabama state law, Etheridge must show that Belk was "conscious that, from doing or omitting to do an act, ***injury will likely or probably result***." *Ex parte Essary*, 992 So. 2d at 9 (emphasis added); *see also Wal-Mart Stores, Inc. v. Thompson*, 726 So. 2d 651, 653 (Ala. 1998) (the "standard required to support a wantonness claim is a high one and should remain such").

Here, there is no evidence that Belk was conscious that an injury would likely or probably result from the placement of the clothing rack. Proctor testified in her

16

deposition that it was "not uncommon for a fixture to be close to the carpet edge," and that clothing racks were spaced out for merchandising purposes and arranged with the goal of selling merchandise. Doc. 26-2 at 19; *see* Doc. 25 at 6. Proctor also testified that a clothing rack bar protruding six inches into a walkway was not uncommon. Doc. 26-2 at 19; *see* Doc. 25 at 6.

At most, Etheridge has shown that the placement of the clothing rack and the protruding bar was not uncommon—i.e., the "conscious doing of some act." *See Ex parte Essary*, 992 So. 2d at 9. But there still is no evidence from which a jury reasonably could infer that—given the placement of the clothing rack—Belk had any awareness that injury was likely or probable. *See Thompson*, 726 So. 2d at 653 ("[T]he management of that store had no information from which they could have known that an accident of the kind which occurred in this case was likely to happen.").

## CONCLUSION

For the reasons stated above, Defendant Belk's summary judgment motion (Doc. 21) is **GRANTED IN PART**, with respect to Etheridge's wantonness claim, and **DENIED IN PART**, with respect to her negligence claim. There are triable fact issues on Etheridge's negligence claim. Etheridge's wantonness claim is **DISMISSED WITH PREJUDICE**.

The court **SETS** this case for a telephone status conference on **Tuesday,**

17

**February 28, 2023, at 3:00pm**.  Ahead of that status conference, counsel are **ORDERED** to meet and confer regarding potential case resolution and trial scheduling.

   **DONE** and **ORDERED** this February 15, 2023.

_____
   **NICHOLAS A. DANELLA**
   UNITED STATES MAGISTRATE JUDGE